*399 MR. JUSTICE SHEEHY,
dissenting:
I dissent from the unqualified acceptance by this Court and by the District Court of the blood test results in light of the record here.
In my original dissent to the original opinion which has now been withdrawn, I contended that no foundation had been laid for the supposedly scientific tests of the blood alcohol concentrations here. I continue here in that dissent to the new opinion because at a minimum, for scientific test results a foundation should include the following factors: (1) that the persons engaged in the test were qualified; (2) that the machine used and its components were in proper condition; and (3) that the test was properly conducted.
In this case, factors (1) and (3) have not been shown. It is incredible that the hospital chart does not show the precise time in which the blood was withdrawn from Bartel, nor the person who withdrew the blood. Thus we have no direct evidence as to how part of the test was conducted, a most important part, the drawing of the blood sample itself. A record of the time the blood was withdrawn from Bartel was especially important, because if the blood was taken after mannitol had been administered, at 3:35 a.m., then the test was subject to considerable doubt. Mannitol is a crystaline alcohol having a chemical make-up of C6H1406. If Bartel’s blood was withdrawn before the mannitol was administered, but isopropyl was used to swab the location where the blood was withdrawn, there is till a problem (not admitted by the State experts) because isopropyl has a chemical make-up of C3H80. The chemical symbol for ethyl alcohol, the intoxicating agent in liquor is C2H60.
The Court, like many another, has fallen prey to the pseudo-science of alcohol concentrations in the blood, urine or breath to determine drunkenness. With the advent of statutes using alcohol concentrations to define drunk driving, a holy mystique of a sort has grown up around the levels defined in those statutes. Courts and lawyers untutored in chemistry and in spite of their own experience accept these levels without question. They adopt the statutes as establishing a sharp cleavage between drunkenness and nondrunkenness. The assumption is embraced that one having an alcohol concentration of less than 0.10 is not drunk, but one having an alcohol concentration greater than 0.10 is drunk, even though that assumption belies their own personal observation. It is our common observation that some people carry their booze better than others.
What is forgotten is that 0.10 alcohol concentration is an arbitrary figure, so arbitrary that proof of such an alcohol concentration with *400 out more, is in itself a crime in operating a motor vehicle. Section 61-8-406, MCA. Until the legislative amendment in 1971, the former arbitrary figure was 0.15 alcohol concentration which would be half again as much alcohol in the blood. Section 32-2142, R.C.M. 1947, amended Ch. 32, Laws of Montana (1971).
Now courts give greater probity to blood test results than to witnesses’ observations of drunken persons, when the reverse should be true. To paraphrase the remark about pornography, we cannot define drunkenness, but we know it when we see it. In this case, there was a wealth of evidence about the amount of liquor consumed, the appearance, the eyes, the breath, the gait, the slurred speech, the lack of coordination that, had the District Court relied principally on these and not so heavily on the blood test results, I would then support its judgment. But because the blood test results weighed so heavily in its opinion in determining the intoxication of Bartel, I am forced to dissent.
I have never worshipped at the shrine of blood test results because they are for the most part a false idol, with feet of clay and the heart of a gas chromatograph.
It is evident that the majority and the District Court have not thoroughly thought out the implications of blood test results, because each blithely accepts that Bartel had “a blood alcohol level of .171 percent” or that at the time of the accident, Bartel’s blood alcohol was “between .103 and .213 percent.” Percent of what? Blood alcohol levels cannot be defined in terms of percentage unless they are expressed in terms of percentage of weight or percentage of volume. Neither volume nor weight is met under the evidence in this case.
The statute defining “alcohol concentration,” for the purpose of this case, requires grams of alcohol per 100 milliliters of blood. Section 61-8-407, MCA. Grams are a measure of weight. Milliliters are a measure of volume. One cannot be expressed in terms of the other by percentage unless the substances being compared weigh exactly the same.
Alcohol is lighter than water, because it floats on water. In fact, absolute alcohol has a specific gravity of 0.789, compared to water which has a specific gravity of 1. Blood is thicker than water, both socially and physically. I do not know the specific gravity of human blood but I suspect that it is greater than the specific gravity of water because my personal observation is that blood sinks in water. A cubic centimeter of alcohol, therefore, would weigh much less than *401 a cubic centimeter of human blood. If we had a 100 milliliter mixture of water and alcohol of which the alcohol consisted of 1 percent by volume, the alcohol in the mixture would weigh 0.789 grams. If the alcohol in the same mixture constituted 1 percent by weight, the mixture would contain nearly 1.267 cubic centimeters of alcohol. Chemically that is a vast difference.
It is for that reason that the statute defining alcohol concentration now avoids references to percent, and relates instead to weight of alcohol per volume of blood. There is nothing, however, in the record before us to tell us what the so-called experts were talking about when they were referring to “percent” in determining blood alcohol levels.
Lost in the mumbo-jumbo of the pseudo-science of blood alcohol tests is the fact that the tests involve infinitesimally small amounts. This is because statutory blood alcohol terms are couched in terms of metric measures, perhaps purposely so. Most Americans do not comprehend the relationship between metric measures and their U.S. equivalents. It may have helped if section 61-8-407, MCA, had defined “alcohol concentration” as the number of 0.035 ounces of alcohol per 6.1 cubic inches of blood. (A gram is 0.035 ounce.) We might be able to grasp then that if Bartel’s blood alcohol level was 0.171 (assuming that 0.171 refers to grams) that his actual alcohol level per ounce was 0.005985 (0.171 x 0.035). Put another way, if each ounce of his blood was broken into a thousand parts, at a blood alcohol level of 0.171, six parts of that blood would constitute alcohol.
The minuteness of those figures is lost in the metric system in the pseudo-science of blood alcohol levels. Minute amounts of alcohol in the blood can cause intoxication. Minute amounts of other alcohol-related substances, if present, can seriously distort blood test results.
I fear the weight given to blood test results, especially in civil cases where other and more convincing evidence of drunkenness is available. I fear the testimony of experts who testify that the margin for error in these tests is “2 to 3 percent.” Two percent of 0.005985 is 0.0001197. I truly doubt that any machines available here are capable of measuring down to the ten millionth part. If we accept these statements without question, we have been overtaken by a form of doublethink in the guise of metric measures.
Please do not answer that the hospital and doctors used the blood test results for their medical purposes, and therefore the results *402 must be accurate. The medical people here did not need blood tests to determine that this man had been drinking. The nurse wrote “intoxicated” upon the chart the first moment she saw him. That observation was not based on blood test.
For these reasons, I would set a rigid foundational requirement for the admission of blood test evidence. Routine would not be enough. No perfect routine and no perfect machine can escape the impact of the imperfect human being. The majority in this case have elevated routine into infallibility.
I would reverse this case on the grounds that the District Court found evidence of intoxication based on the blood tests for which no proper foundation was laid and for the further reason that the blood test results do not relate to the statutory scheme of weight per volume of blood.